## KNEVALS *v.* HYDE.

*(Circuit Court, D. Nebraska.* ———, 1881.)

1. ACT OF CONGRESS, JULY 23, 1866—BONA FIDE PURCHASER.

  Under the act of congress of July 23, 1866, the equitable ownership of the land vested in the St. Joseph & Denver City Railroad Company upon filing the map of the location of the road with the secretary of the interior, and a patent thereafter issued by the United States conferred no title on a *bona fide* purchaser without notice of the location of the road.

2. RIGHT TO DECLARE FORFEITURE.

  The right to declare a forfeiture of the land for breach of condition by the company, and resume the grant, belongs to the United States, and cannot be taken advantage of by such purchaser.

In Equity. Demurrer to Original Bill.

In 1866 congress made a grant of land to the state of Kansas to aid in the construction of the St. Joseph & Denver City Railroad, which road was to run from Elwood, in Kansas, *via* Maryville, to a junction with the Union Pacific Railroad, or any branch thereof. In pursuance of the terms of the grant the company filed a map of its line with the secretary of the interior on the twenty-eighth of March, 1870. This map was transmitted to the local land-office at Beatrice, where it was received on the thirteenth of April following. On the elev-

enth of April one Cropsey entered one quarter section included in the grant, and afterwards a patent therefor was issued to him. Knevals claims under the railroad company, and Hyde under Cropsey, and the first question arising in the case was whether the grant to the company took effect when the map was filed with the secretary of the interior, or when it was received by the local officers. The grant contained the condition that the road should be built to a junction with the Union Pacific Railroad, or one of its branches, within ten years. The road was built to a junction with the Burlington & Missouri River Railroad in Nebraska within the time limited, but not to the Union Pacific, and it was objected by the defendant that the Burlington was not a branch of the Union Pacific, and therefore that the condition had been broken and the lands forfeited. It was also objected that Cropsey was a *bona fide* purchaser without notice of the location of the railroad, and therefore was entitled to protection against its claims.

*J. M. Woolworth,* for plaintiff.

*E. Wakeley,* for defendant.

MILLER, C. J. 1. I am of the opinion that within the meaning of the first section of the act of congress of July 23, 1866, (chapter 212 of that session,) granting lands to the state of Kansas for the use and benefit of the St. Joseph & Denver City Railroad Company, "the line or route of the road" was "definitely fixed" when on the twenty-eighth of March, 1870, a map of said location, adopted by the board of directors of the company, was received by and filed with the secretary of the interior as the law required. It follows that on that day the right to the use and benefit of the sections of land designated by odd numbers, within 10 sections on each side of that line, became vested in the company, including the quarter section now in controversy, unless it had been previously sold, or otherwise came within the excepting clause of the act.

2. The origin of defendant's adverse title is a purchase made from the United States through its land officers 14 days after the rights of the company had vested. The equitable

title to the land had therefore vested in the company before any interest in it whatever had come to Cropsey, the grantor of the defendant.

3. The rights of the parties in this case are not affected by the question of notice. No other notice was required of the company than filing its map with the secretary of the interior. No other act was necessary on the part of the company to establish its right to the land. No other act could be done by the company towards perfecting the title until so much of the road was built as authorized it to apply for patents for the land. And it will scarcely be contended that until the patents issued any location by purchase from the government could come in and take it up as vacant land. It is probable that the strict legal title passed to the state of Kansas for the use of the company by the act of filing the map, and related back to the date of the statute, which makes a grant to the state *in præsenti* of lands to be ascertained by the act of locating the route of the road. But it is sufficient to say that on the filing of the map there was vested in the company the equitable ownership of the land—an equity which could only be defeated by failure to perform the conditions of the grant. The power in the offices of the land department to sell the land was gone, and the patent issued by them conferred no real right, though it gave an apparent title. It is not a case, therefore, of notice, but a case of priority of right, in which the prior right must prevail. If it were otherwise, the filing of the map in the office of the commissioner of the general land-office at Washington, the only notice the company could give, was sufficient to require Cropsey to take notice of it.

4. With the question of forfeiture, by reason of failure to complete the road, neither defendant nor his grantor has anything to do. They cannot declare such a failure, nor does a loss of the title arise as a legal consequence out of such a failure. The sale to defendant's grantor was not intended to assert such a forfeiture, because at the date of that sale no ground of forfeiture existed. This court, however, has settled the doctrine that in cases of this class the right to

declare the forfeiture and resume the grant belongs to the United States, and can only be made effectual by an act of congress or a judicial proceeding. *Schulenburg* v. *Harriman*, 21 Wall. 44. The allegations of the bill demurred to make a case, therefore, in which complainant, being the equitable owner of the land, finds himself embarrassed by an apparent legal title in defendant, and therefore entitled to relief in a court of equity.

The demurrer to the bill is therefore overruled, with leave to defendant to answer within a reasonable time, to be filed by the court.