## UNITED STATES v. LOUGHREY et al.

(Circuit Court of Appeals, Seventh Circuit. February 8, 1896.)

### No. 139.

1. PUBLIC LANDS—RAILROAD GRANTS—NONPERFORMANCE OF CONDITIONS SUBSEQUENT.

The act of June 3, 1856, granting lands to the state of Michigan to aid in the construction of a railroad, was a conveyance in præsenti, subject to be defeated by nonperformance of the conditions upon which the grant was made. These conditions were conditions subsequent, the nonperformance of which could be taken advantage of only by the United States; and, even after the time limited for performance, the title would remain in the state until some action was taken by the government declaring the forfeiture, and reinvesting itself with the title.

2. SAME—TRESPASS—CUTTING TIMBER.

Where lands granted to a state to aid in railroad construction have become forfeitable to the United States for nonperformance of conditions subsequent, the unauthorized cutting of timber therefrom gives the government no right of action, unless, before the cutting, it has actually declared a forfeiture, and reinvested itself with the title; otherwise, the cause of action is in the state, and remains therein, notwithstanding a subsequent declaration of forfeiture by congress. Schulenberg v. Harriman, 21 Wall. 44, followed.

Error to the Circuit Court of the United States for the Eastern District of Wisconsin.

This was an action at law by the United States against Charles Loughrey and Miles H. Wheeler to recover the value of certain timber cut from lands which were included in the grant made to the state of Michigan by the act of congress of June 3, 1856, to aid in the construction of railroads. The case was tried to the court on an agreed statement of facts, and judgment was given for defendants. Plaintiff brings error.

The plaintiff in error sued the defendants in error in trover for timber cut from the N. ½ of the N. W. ¼ of the N. E. ¼ of section 13, township 44 N., of range 35 W., in the state of Michigan. The complaint charges the cutting of the timber by one Joseph E. Sauve, and that he removed from the lands 80,000 feet of timber so cut, and left the balance skidded upon the lands. The defendants are charged as purchasers from Sauve. The amount of timber cut by Sauve is alleged to have been 600,000 feet, and the time of the cutting in the winter of 1887–88, and prior to the 1st day of March, 1888.

The case was tried by the court, without a jury, upon facts stipulated as follows: "First. The defendants, prior to the 1st day of March, 1888, cut

and removed from the north half (½) of the northwest quarter (N. W. ¼), and the northwest quarter (N. W. ¼) of the northeast quarter (N. E. ¼), and the southeast quarter (S. E. ¼) of the northeast quarter (N. E. ¼), of section thirteen (13), in township forty-four (44) north, of range thirty-five (35) west, in the state of Michigan, four hundred thousand (400,000) feet of pine timber, and converted the same to their own use. Second. That such cutting and taking of said timber by the defendants from said land was not a willful trespass. Third. That none of the lands in question were ever owned or held by any party as a homestead. Fourth. That the value of said timber shall be fixed as follows: That the value of the same upon the land or stumpage, at $2.50 per thousand, board measure; that the value of the same when cut and upon the land, $3 per thousand, board measure; that the value of the same when placed in the river was $5 per thousand, board measure; that the value of the same when manufactured was $7 per thousand, board measure. Fifth. That the lands above described were a part of the grant of lands made to the state of Michigan by an act of the congress of the United States, approved June 3, 1856, being chapter 44 of volume 11 of the United States Statutes at Large, and that said lands were accepted by the state of Michigan by an act of its legislature approved February 14, 1857, being Public Act No. 126 of the Laws of Michigan for that year, and were a part of the lands of said grant within the 'six-mile limit,' so called, outside of the 'common limits,' so called, certified and approved to said state by the secretary of the interior, to aid in the construction of the railroad mentioned in said Act No. 126 of the Laws of Michigan of 1857, to run from Ontonagon to the Wisconsin state line, therein denominated the 'Ontonagon and State Line Railroad Company.'" Dated October 14, 1892. The finding of facts by the court was in accordance with the foregoing stipulation, with the additional finding that said railroad was never built, and said grant of lands was never earned by the construction of any railroad. And, as conclusions of law, the court found: "First. That the cause of action sued on in this case did not, at the time of the commencement of this action, and does not now, belong to the United States of America. Second. That the defendants are entitled to judgment herein for the dismissal of the complaint upon its merits." No exceptions were taken to the court's findings of fact, and no requests to find were made. Exceptions were only taken to the conclusions of law found by the court, and to its failure to find other and contrary conclusions.

J. H. M. Wigman, for the United States.

W. H. Webster, for defendants in error.

Before WOODS and SHOWALTER, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge, after stating the case as above, delivered the opinion of the court.

We think the conclusions of law found by the court are fully supported by the adjudged cases. The act of congress of June 3, 1856, constituted a conveyance in præsenti of the lands in question to the state of Michigan. By that act the state of Michigan took the title to the lands, subject, of course, to be defeated by nonperformance of the conditions upon which the grant of lands was made. Until there occurred a breach of these conditions subsequent, the title would remain in the state of Michigan, and a trespass upon the lands would be one for which an action would lie by the state; and, even though the conditions upon which the grant was made might never have been complied with, the title would not revert to the government until some action should be taken by the government or by congress declaring the forfeiture,

and taking back the lands. No such action was taken by congress in this case until after the acts complained of were committed, and even then it does not appear that the act of congress included the lands in question. No one had a right to complain of the nonaction by the government in failing to declare a forfeiture and reinvest itself with the title to the lands; and, until it did so, the title remained in the state. As the record shows title out of the government by an act conveying title in præsenti from and after June 3, 1856, it was incumbent upon the plaintiff in error to show that it had declared a forfeiture, and reinvested itself with the title, before the time of the cutting of the timber in the winter of 1888. This it has not done. The only attempt to show a reinvestment of title in the government is by the act of March 2, 1889 (25 Stat. 1008), passed a year after the trespass was committed by Sauve: and that act does not appear by its terms to cover the land in question. That act declared a forfeiture of lands coterminous with the uncompleted portion of the railroad, in aid of which the grant of 1856 was made, and there is nothing in the record to show whether it covered these lands or not; so that there is no evidence that the government has ever resumed title to the lands from which the timber was cut. But, even if the act were broad enough to cover the lands in question, it would still appear that, when the cutting and removal of the timber was done, the title was in the state of Michigan, and might always remain there. Moreover, there was no attempt on the part of congress to take back more than the title to the lands, or in any way to invest itself with the right to sue for trespasses committed while the title was out of the government.

A construction was placed upon the act of June 3, 1856, by the supreme court in Iron Co. v. Cunningham, 155 U. S. 354, 15 Sup. Ct. 103, following the cases of Schulenberg v. Harriman, 21 Wall. 44; U. S. v. Southern Pac. R. Co., 146 U. S. 570, 13 Sup. Ct. 152, and U. S. v. Northern Pac. R. Co., 152 U. S. 284, 14 Sup. Ct. 598. In the opening of the opinion by Mr. Justice Brewer, on page 371, 155 U. S., and page 103, 15 Sup. Ct., the court says:

"The act of June 3, 1856, was a grant in præsenti; and when, by the filing of the map of definite location, the particular tracts were identified, the title to those lands was vested in the state of Michigan, to be disposed of by it in aid of the construction of a railroad between Ontonagon and the Wisconsin state line. The lands were withdrawn from the public domain, and no longer open to settlement by individuals for pre-emption or other purposes. Although there was a provision for the forfeiture of the lands if the road was not completed within ten years; such provision was a condition subsequent, which could be enforced only by the original grantor, the United States; and until, in some appropriate method, it asserted its right of forfeiture, the title remained in the state of Michigan or the corporations upon which, from time to time, it conferred the benefit of the grant."

In Schulenberg v. Harriman, 21 Wall. 44, a similar act, passed on the same day, granting lands to the state of Wisconsin for similar purposes, was under consideration, and the same ruling was made. That case, like this, involved a contest over pine logs cut upon the land while held by the state, and it was held that the

right of action was in the state or those holding under it. In the opinion of this court, the case at bar is properly ruled by that case. In that case it was held to be settled law that no one can take advantage of the nonperformance of a condition subsequent annexed to an estate in fee but the grantor or his heirs, and, if they do not see fit to assert the right to enforce forfeiture on that ground, the title remains unimpaired in the grantee, and that, the title to the land remaining in the state, the lumber cut upon the land belonged to the state; that, while the timber was standing, it constituted part of the realty; being severed from the soil, its character was changed; it became personalty, but its title was not affected; it continued as previously the property of the owner of the land, and could be pursued wherever it was carried. The only doubt that could exist in regard to the case being ruled by Schulenberg v. Harriman is that in that case, although the conditions of the grant had been broken by a total failure to build the road, still no forfeiture had been declared by congress. But, as we have seen, the act declaring a forfeiture in the case at bar was passed a year after the cutting of the timber, and besides that the act does not profess to apply to all lands granted by the act of June, 1856, to the state of Michigan, but only to such portions of the land granted as were opposite to and coterminous with the uncompleted portion of any railroad to aid in the construction of which said lands were granted, the forfeiture was not declared until a year after the timber in question was severed from the land, and, according to the doctrine of the supreme court of the United States, became personal property belonging to the state.

We think, therefore, that the court below was right in holding that the cause of action did not belong to the plaintiff at the time of the commencement of the action, or at the time of the trial. The judgment of the circuit court is affirmed.