782 So.2d 206 (2000)
Charles E. KAYLOR, Sr.
v.
STATE.
1990246.
Supreme Court of Alabama.
August 11, 2000.
Opinion on Application for Rehearing Overruled October 27, 2000.
*207 Charles E. Kaylor, appellant, pro se.
William A. Gunter, Department of Conservation and Natural Resources, Montgomery, for appellee.
PER CURIAM.
Charles E. Kaylor, Sr., appeals from a judgment in favor of the State in a declaratory-judgment action he filed against the Department of Conservation and Natural Resources ("the Department") to determine whether the State has title to a certain tract of land located in Madison County and to determine whether he has rights to the land.[1] We reverse and remand.

I.
The parties stipulated to all of the operative facts. Kaylor acquired the disputed tract in 1989 for hunting purposes. Because he wanted a larger area on which to hunt, he applied for a hunting lease of adjoining property that he knew to be owned by the State. The Department, acting on the State's behalf, granted him the lease, but informed him that the tract he had purported to purchase was considered by the Department to be State property also. The Department told him that he had to obtain a hunting lease for that tract as well, if he wished to hunt there. Kaylor and the State then executed a contract with a provision stating that Kaylor did not acquiesce to the State's claim of title to the disputed tract.
At one point, the Department informed Kaylor that it would sue him to establish the State's ownership, but for nearly 10 years the Department took no action. Thus, on September 15, 1998, Kaylor sought to end the dispute by suing the Department in the Madison Circuit Court; in his action, he sought a temporary injunction against the Department to prevent it from continuing to lease the disputed tract to the public for hunting purposes until the court decided the issue of ownership. The Department immediately moved to transfer the case to the Montgomery Circuit Court, and the Madison Circuit Court granted that transfer.
After the case had been transferred to the Montgomery Circuit Court, the parties submitted the question of ownership to the court and requested a declaratory judgment based on a stipulated statement of facts. The trial court entered a judgment declaring the State to be the owner of the disputed tract. Kaylor appealed.
The stipulation of facts relating to the disputed parcel contains a history of that land, revealing how this controversy over ownership came about. The history that *208 we consider germane to this case begins on May 23, 1828, when the Federal Government passed the Muscle Shoals Land Grant ("the 1828 Act" or "the Act"), which identified a vast amount of land to be relinquished by the United States to the State of Alabama for purposes of improving navigation on the Tennessee River. The ensuing land patent, however, was not issued until April 14, 1931, over 100 years later, and was not recorded in the Madison County Probate Office until December 2, 1937.
Between the passage of the 1828 Act and the issuance of the land patent over a century later, various partiesother than the Stateare named as owners of the disputed tract in the records maintained by the Madison County tax assessor and the Probate Court of Madison County.
On August 24, 1914, the disputed tract was included in lands sold at a tax sale; the State took title to the property after no one bid the required sum. Also, on October 26, 1926, the state auditor, with the approval of the Governor, sold the disputed tract to R.N. Coleman, and R.N. Coleman subsequently conveyed the tract to J.W. Cochran, whose heirs later conveyed the tract to Kaylor.

II.
In his brief, Kaylor sets forth the following three issues: (1) whether the State is estopped to deny the recitals of its deed, issued in accordance with §§ 40-10-132, -134, and 135, Ala.Code 1975, in which it purported to convey all rights, title, and interest of the State to the purchaser and his successors in ownership; (2) whether the deed signed by the state auditor with approval of the Governor constitutes a contract that is binding on future State officials or courts; and (3) whether the State should be liable for selling for taxes properties that are listed in the tax records as belonging to the State.
The State argues that when the tax deed was issued on the subject property, the property was not subject to taxation; therefore, it argues, the deed executed to Kaylor's predecessor in title was invalid and conveyed no interest in the land. The State also contends that the doctrine of equitable estoppel does not apply to the State.
As we view the case, our resolution of the legal issues presented initially depends on when the State acquired legal title to the land that includes the disputed tract. Kaylor argues that the 1828 Act conveyed title to the State. The State contends that it did not obtain legal title to the land until it received the land patent from the Federal Government in 1931. The 1828 Act states, in pertinent part:

"Be it enacted by the Senate and House of Representatives of the United States of America, in Congress assembled, That four hundred thousand acres, of the relinquished lands in the counties of Madison, Morgan, Limestone, Lawrence, Franklin, and Lauderdale, in the state of Alabama, be, and the same is hereby, granted to said state, to be applied to the improvement of the navigation of the Muscle Shoals, and Colbert's Shoals in the Tennessee river, and such other parts of said river within said state as the legislature thereof may direct: But if there shall not be four hundred thousand acres of relinquished unappropriated land in said counties, the deficiency to be made up out of any unappropriated lands in the county of Jackson, in said state.
"Sec. 2. And be it further enacted, That said state of Alabama, shall have power to sell, dispose of and grant said land, for the purposes aforesaid, at a price not less than the minimum price of *209 the public lands of the United States, at the time of such sale.
"Sec. 3. And be it further enacted, That the said state of Alabama shall commence said improvements within two years after the passage of this act, and complete the same within ten years thereafter.
"Sec. 4. And be it further enacted, That if said state of Alabama shall apply the lands hereby granted, or the proceeds of the sales, or any part thereof, to any other use or object whatsoever, than as directed by this act, before said improvements shall have been completed, the said grant for all lands then unsold shall thereby become null and void; and the said state of Alabama shall become liable and bound to pay to the United States the amount for which said land, or any part thereof, may have been sold, deducting the expenses incurred in selling the same...."
Muscle Shoals Land Grant, ch. 75, 4 Stat. 290 (emphasis original on "be it enacted" clauses; other emphasis added).
One of the first questions we must answer is: Did the Act actually convey the subject land to the State of Alabama, or did the Act merely authorize the subject lands to be later conveyed to the State by patent?
The language in the 1828 Act that we have emphasized unequivocally conveys a present interest to the State of Alabama and authorizes the State to sell the land for purposes specified in the Act at terms consistent with the price of public lands of the United States at the time of the sale. In Schulenberg v. Harriman, 88 U.S. (21 Wall.) 44, 61-62, 22 L.Ed. 551 (1874), the United States Supreme Court held that where an act of Congress contains language consistent with an immediate grant of property to a State, subsequent proceedings that might be necessary for the identification of specific tracts do not undermine the status of the act as an immediate conveyance.
"[U]nless there are other clauses in a statute restraining the operation of words of present grant, these must be taken in their natural sense to import an immediate transfer of title, although subsequent proceedings may be required to give precision to that title and attach it to specific tracts. No individual can call in question the validity of the proceedings by which precision is thus given to the title where the United States are satisfied with them."
88 U.S. at 62 (emphasis added). Given the clear language of the 1828 Act, the State cannot question the status of its title prior to the issuance of the patent in 1931.
We do not have before us any information as to how the property granted by the United States to the State in 1828 fell into private hands, thereby creating liability for ad valorem taxes, which culminated in a tax sale in 1914 and a return of title to the State. Nevertheless, under the teaching of Schulenberg, the land was properly subject to liability for ad valorem taxation and the 1926 tax deed from the State to Kaylor's predecessor in title, a deed made as a result of the failure of previous private owners to pay ad valorem taxes, was a valid transfer of the State's interest.
Because of our resolution of the issue of the State's authority to convey the property at the time of the issuance of the tax deed in 1926, we pretermit discussion of the other issues raised by Kaylor. We conclude that the judgment entered in favor of the State is due to be reversed and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
*210 HOUSTON, COOK, SEE, LYONS, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
HOOPER, C.J., and MADDOX, J., dissent.
MADDOX, Justice (dissenting).
I respectfully dissent from the holding that the Muscle Shoals Land Grant Act conveyed the lands described in this case in 1828.
In analyzing the question regarding when this conveyance occurred, I note that the 1828 Act does not provide for the issuance of a patent as a condition for the passing of title. Had the Act contained such a provision, then, certainly, Kaylor's argument would have merit. See, e.g., Michigan Land & Lumber Co. v. Rust, 168 U.S. 589, 591, 18 S.Ct. 208, 42 L.Ed. 591 (1897) (holding that legal title passed upon the issuance of a patent where that patent was based on the express provisions of an act of Congress); and Nelson v. Weekley, 177 Ala. 130, 134-35, 59 So. 157, 158-59 (1912) (where the plaintiff prevailed after this Court found that he satisfied the conditions of a Federal act that, if such conditions were met, expressly entitled persons such as the plaintiff to the issuance of a patent by the Land Office).
I believe that whether title passes by an act of Congress or by the issuance of a patent depends on when, or under what conditions, the act indicates that the conveyance is to become effective. In McArthur v. Brue, 190 Ala. 563, 67 So. 249 (1914), this Court stated:
"[I]f the act of Congress in question provides that the title shall vest, by virtue of the act, when a survey is made, and the survey was so made, before the issuance of the patent, then the patent is merely a confirmation of the grant, survey, and location, by the Land Department of the government, and not the grant itself. What was said in the case of Price v. Dennis, 159 Ala. 625, 49 [So. 248 (1909)], is applicable here: `If Congress had granted the land, and had thereby provided that the title should pass on selection as provided for in the act, the date of the selection would be the date of the passage of the legal title, as well as the equitable title, out of the government. The legal title can pass out of the United States as well by such a grant of Congress as by a patent; and if a patent is issued thereafter it may be that it is merely evidentiary of the prior grant and selection....'
"On the other hand, if the act of Congress, and the survey, merely authorized the grant to be made by a patent, then, of course, the title passed only when the patent issued."
190 Ala. at 564-65, 67 So. at 249-50 (1914).
Based on the facts of this case and upon my interpretation of the Act, I do not believe that title passed from the Government to the State of Alabama until the patent issued. I base this conclusion on elementary principles of property law, which clearly provide that a conveyance cannot occur without a description of the real property or the establishment of a method by which such a description can be obtained. Bank of Mobile v. Planters' & Merchants' Bank, 8 Ala. 772, 777 (1845). On this point, this Court has stated that a Congressional act conveys legal title "when all the conditions prescribed by Congress for the alienation of the public domain have been complied with [and] the land alienated [has been] distinctly defined." Boone v. Gulf, F. & A. Ry., 201 Ala. 560, 561, 78 So. 956, 957 (1918).
I would hold that the Act did not sufficiently describe the lands relinquished to the State, and, thus, was not a conveyance. The 1828 Act effectively set aside a vast *211 amount of land in the Tennessee River valley and made it available for use by the State for the improvement of the navigability of the Tennessee River. The Act authorized the State to select the needed tracts, but did not condition the passing of title on the completion of a survey; thus, the Act did not provide for a method by which the description of the relinquished property could become precisely known. Given the absence of such a provision, I believe Congress intended to pass title to these lands to the State only upon the issuance of a patent that specifically described the property being conveyed.[2] Therefore, I would affirm the judgment of the trial court.
HOOPER, C.J., concurs.

On Application For Rehearing
PER CURIAM.
On application for rehearing, the State criticizes our statement in the August 11, 2000, opinion, that this Court did not have before it "any information as to how the property granted by the United States to the State in 1828 fell into private hands, thereby creating liability for ad valorem taxes, which culminated in a tax sale in 1914," 782 So.2d at 209, and argues that our decision was based upon facts that were not properly before the Court. We remind the State of the stipulation in the record that reflects that the property was assessed to individuals as early as 1898 so as to permit the State to collect taxes from those individuals. The record also reflects that from 1898 through 1920 the property sometimes was assessed to the State and/or the United States. While the record does not tell us the specific basis that justified the State's assessing taxes against the owner of the property in 1913 and selling the property in 1914 for the failure to pay taxes, that fact does not affect our conclusion that the Act passed title to the State immediately, pursuant to Schulenberg v. Harriman, 88 U.S. (21 Wall.) 44, 61-62 (1874), and that the 1926 deed was a valid transfer of the State's interest to Kaylor's predecessors in title.
We have overlooked the disrespectful tone of the application for rehearing sot hat we could dispassionately approach the issues on their merits, as we are required by oath to do. We are disappointed that counsel for the State has been less than attentive to the obligations of his oath as an attorney.
APPLICATION OVERRULED; OPINION EXTENDED.
HOUSTON, COOK, SEE, LYONS, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
HOOPER, C.J., and MADDOX, J., dissent.
NOTES
[1] This tract has been described by the parties on joint stipulationas "the west half of the northwest quarter of Section 21, Township 1, Range 3E."
[2] As I have stated, I recognize that the Federal Government may convey land to a state without requiring the issuance of a land patent. In Schulenberg v. Harriman, 88 U.S. (21 Wall.) 44, 22 L.Ed. 551 (1874), the Supreme Court held that title to lands located in Wisconsin had passed from the Federal Government to that state by virtue of a Congressional Act that set aside that land for the construction of a railroad. Schulenberg, however, is distinguishable from the present case. First, the act in Schulenberg described the granted lands with a higher degree of specificity than that found in the 1828 Act. Second, there is no indication in Schulenberg that a patent was ever issued for the granted lands, as there was in the present case. For these reasons, I believe Schulenberg is inapposite to the present case.