## JOPLIN v. CHACHERE.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 96.   Argued December 16, 1903.—Decided January 4, 1904.

An adjudication by commissioners under sec. 4 of the act of March 3, 1807, amending the act of March 2, 1805, for settlement of claims of land in the Territory of Orleans and Louisiana, for an exact quantity of land already occupied by the claimant by one claiming under a grant of the former sovereign, and which was confirmed by the act of April 29, 1816, so vested the title in the claimant that a patent issued by the Government in 1900 to the heirs of the claimant will not prevail against a title properly acquired meanwhile by adverse possession based upon a tax sale, notwithstanding no survey other than the general survey of 1856 was made after the confirmation.

THIS action was brought in the Eighteenth Judicial District Court, parish of Acadia, State of Louisiana, by plaintiff in error to have himself declared the owner of a tract of land containing 870.06 acres, described as section 41, township 7 south, range 1 east.   Subsequently he amended his petition and claimed one-tenth individually and nine-tenths as administrator of the succession of Bennet Joplin.  He traced title in both capacities to Bennet Joplin, to whom the land was confirmed by the act of Congress, approved March 3, 1807, entitled "An act respecting claims of land in the Territory of Orleans and Louisiana."   2 Stat. 440.  This act was an amendment to the act of March 2, 1805, 2 Stat. 324, which provided for ascertaining and adjusting the titles and claims to land within the same territory.   The purpose of both acts was to recognize and establish the titles possessed by the inhabitants of that territory prior to its acquisition by the United States.

Section 4 of the act of 1807 provided:

"That the commissioners appointed or to be appointed for the purpose of ascertaining the rights of persons claiming land in the Territories of Orleans and Louisiana, shall have full powers to decide according to the laws and established usages and customs of the French and Spanish governments, upon

all claims to lands within their respective districts, where the claim is made by any person or persons, or the legal representative of any person or persons who were on the 20th day of December, one thousand eight hundred and three, inhabitants of Louisiana, and for a tract not exceeding the quantity of acres contained in a league square, and which does not include either a lead mine or salt spring, which decision of the commissioners, when in favor of the claimant, shall be final against the United States, any act of Congress to the contrary notwithstanding."

A patent was issued July 16, 1900, in favor of Bennet Joplin, heirs and assigns. Stating the recitals of the patent and some other facts, the Supreme Court of Louisiana said:

"That it [the patent] was granted in accordance with the provisions of the act of Congress of the third of March, one thousand eight hundred and seven. It declares there had been deposited in the General Land Office of the United States a patent certificate numbered fourteen hundred and ninety-nine, issued by the register and receiver of the United States Land Office, on the 25th of May, one thousand nine hundred, whereby it appeared that the private land claim of Bennet Jopling,[1] being number one thousand nine hundred and twenty-seven, Class B, in the report of the old Board of Commissioners for the Western District of the Territory of Orleans, was confirmed by the said commissioners under the authority conferred upon them by the act of Congress approved on the 3d of March, 1807, entitled 'An act respecting claims to land in the Territories of Orleans and Louisiana'; that the claim had been regularly surveyed and designated as section forty-nine in township seven, south of range one west, and section forty-one, in township seven, south of range one east, of the Louisiana meridian, in the Southwestern District of Louisiana, containing eight hundred and seventy acres and six-hundreths of an acre, as appeared by a plat and descriptive notes on file (in the General Land Office) thereof, duly examined and approved by James Lewis, surveyor

---

[1] Name so spelled in opinions of the state court.

general for Louisiana, on the 9th day of May, one thousand nine hundred; that this plat and descriptive notes were inserted and made part of the patent.

"The plat and descriptive notes referred to were signed, as recited, by James Lewis, surveyor general of Louisiana, on the 9th of May, 1900.

"Immediately following the plat the surveyor general recites that it represents the survey of the private land claim of Bennet Jopling, confirmed by the old board of commissioners for the western district of Louisiana, in pursuance of authority conferred upon them by the fourth section of the act of Congress approved March 3rd, 1807, entitled 'An act respecting claims to lands in the Territories of Orleans and Louisiana,' as appeared by their confirmation certificate No. B. 1927, dated March 11th, 1812. After making this recital, the surveyor general says: 'The following being a description of the survey taken from the approved field notes of N. B. Phelps, deputy surveyor.' He then gives the field notes of the survey:

"At the end of the document, under date of May 9th, 1900, are the words 'examined and approved,' followed by the signature of the surveyor general."

The defendants Chachere and Boagni depended for title upon purchases from Victor C. Sittig, by authentic acts duly recorded. Sittig purchased the same at tax sale in 1871. The defendants pleaded that Sittig and themselves had the uninterrupted, peaceable and actual possession of the land in good faith since 1871; had erected improvements thereon and paid taxes. They also pleaded the prescription of three, four, five, ten and twenty years. Victor Sittig was called in warranty and made the same defences.

The District Court decreed that the claim of plaintiff be rejected, the plea of prescription set up by defendants be sustained, and they be quieted in their title and possession of the land. The Supreme Court of the State affirmed the decree, and the case was then brought here. Other facts are stated in the opinion.

*Mr. S. D. McEnery,* with whom *Mr. George S. Dodds* and *Mr. Mark M. Boatner* were on the brief, for plaintiff in error:

Legislative confirmation must be by specific boundaries distinguishing and separating the tract from other tracts making it capable of identification. *Whitney* v. *Morrow,* 112 U. S. 693.

The legal title to the claim was in the United States until patent issued in 1900, and the defendants cannot avail themselves of the plea of prescription. The confirmation to Joplin by act of Congress was only as to quantity, and not to any specifically described tract of land. There was only an equitable interest in Joplin and his heirs until a survey should be made and approved by the surveyor general, segregating his part from the public domain, and from conflicting claims. The survey of 1856 was not approved until May 9, 1900, when the receiver and register approved said survey, giving to Joplin and to conflicting claimants the tracts to which they were entitled under the confirmation. It was only then that the complete legal title was vested in Joplin to the tract of land in controversy. It was only from this time that prescription commences. *Langdeau* v. *Hanes,* 21 Wall. 521; *Morrow* v. *Whitney,* 95 U. S. 551.

Under the law, property, therefore, could not be assessed and sold in the same year, in which it was assessed, and the tax deed is an absolute nullity. *Redfield* v. *Parks,* 132 U. S. 239.

The deed did not contain the recitals required by law and was void. *Rap* v. *Lowry,* 30 La. Ann. 1272; *Lambert* v. *Craig,* 45 La. Ann. 1110; *Thacher* v. *Pervell,* 6 Wheat. 119. There was no judgment, the assessment was made in the name of one who was dead and was not according to law. *Stafford* v. *Twitchell,* 33 La. Ann. 520.

Where the statute makes the deed *prima facie* evidence, that the requirements of the sale have been complied with, it does not relieve the purchaser from proof that the statutory conditions precedent have been complied with. *Robson* v. *Osborn,* 13 Texas, 298; Cooley on Taxation, 355.

*Mr. G. L. Dupré,* with whom *Mr. E. D. Saunders* was on the brief, for defendant in error:

That where a person is entitled to demand a patent for a particular and determined tract of land, he is to be treated as the owner of that tract, and the land as liable to taxation, even though he neglects to take out the patent.

A patent is merely evidence of a grant; it adds nothing to the grantee's rights, but only furnishes him with convenient proof thereof. *Carroll* v. *Safford,* 3 How. 441; *Railway Co.* v. *Prescott,* 16 Wall. 603; *Railway Co.* v. *McShane,* 22 Wall. 444; *Simien* v. *Perrodin,* 35 La. Ann. 931; *Barney* v. *Dolph,* 97 U. S. 652; *Stark* v. *Starrs,* 6 Wall. 402; *Moran* v. *Horsky,* 178 U. S. 212.

The theory of any conflict having existed, as a matter of fact, is too shadowy to deserve consideration. And if there ever was a conflict, it did not involve the land now in suit. And whether there was or was not a conflict, the entire tract stood severed from the public domain after the approved survey of 1856. The title of the Government was wholly and forever extinguished to all the land included in the survey, though there might still have been a question whether Joplin could take all within the lines of the survey, or whether some parts of the area so included had not already been granted to others.

In addition to this, we submit that the fact of any conflict is not established. The plaintiffs offered two letters to show that there was a conflict. The defendants objected, and the offered documents were excluded. The court may have erred in excluding these letters, but this court does not review the action of the state court in excluding or admitting evidence. *Sherman* v. *Grinnell,* 144 U. S. 202; *Cleveland Ry. Co.* v. *Backus,* 154 U. S. 443; *Sayward* v. *Denny,* 158 U. S. 185.

The confirmation by the commissioners and by Congress of a claim originating under the Spanish government, to a particular tract, carried title thereto without a survey or patent. The Supreme Court of Louisiana held that the claim was made and confirmed to a particular body of land.

This finding of fact by the state court will not be questioned by this court. *Thayer* v. *Spratt*, 189 U. S. 353; *West. Un. Tel. Co.* v. *Call Pub. Co.*, 181 U. S. 103.

The allowance and confirmation by the commissioners and by Congress of a claim to a particular, determined tract, in itself carries title to the confirmee, without survey or patent. *Langdeau* v. *Hanes*, 21 Wall. 521.

If a survey is required, then, as a matter of fact, one was made and approved by the proper officers in 1856, and the tract has since been carried on the public maps as the approved Joplin claim.

Both of these state courts found that, as a fact, a survey of the Joplin tract was made and approved by the United States Surveyor General of Louisiana in 1856, and it is immaterial on what evidence the state courts based their finding of fact in this matter. This court will not inquire whether that evidence was adequate or inadequate to support the conclusion which the state courts reached as to the fact. *Chicago Life Ins. Co.* v. *Needles*, 113 U. S. 684.

The adjudication by the state courts that the tax title had become valid by prescription does not present a Federal question. This court will follow the state court on questions of state law. *Dibble* v. *Dellingham*, 163 U. S. 72; *Leffingwell* v. *Warren*, 2 Black, 399; *Bauserman* v. *Blunt*, 147 U. S. 652; *Poffe* v. *Langford*, 104 U. S. 770; *N. O. Waterworks Co.* v. *Louisiana*, 185 U. S. 351; *Castillo* v. *McConnico*, 168 U. S. 674.

Plaintiffs do not attack the constitutionality of the statute; they merely complain that, in applying it the state court has erred in holding a tax title to be *prima facie* valid and a proper basis for the ten years' prescription. Even if this decision were erroneous, which it is not, that error would not raise a Federal question. Where the statute is not assailed, this court will not review alleged errors of the state courts in the administration of the statute, because, it is charged, such errors bring about a denial of due process of law. *Lent* v. *Tillson*, 140 U. S. 331.

Mr. Justice McKenna, after making the foregoing statement, delivered the opinion of the court.

The question presented is the effect of the defence of adverse possession and the plea of prescription. The contention of plaintiff in error is that such defence cannot avail against a United States patent. In other words, until the issue of the patent the title was in the United States and was unaffected by the occupation of the defendants.

Counsel say:

"The confirmation to Joplin by act of Congress was only as to quantity, and not to any specifically described tract of land. There was only an equitable interest in Joplin and his heirs until a survey should be made and approved by the surveyor general, segregating his part from the public domain, and from conflicting claims. The survey of 1856 was not approved until May 9, 1900, when the receiver and register approved said survey, giving to Joplin and to conflicting claimants the tracts to which they were entitled under the confirmation. It was only then that the complete legal title was vested in Joplin and his heirs to the tract of land in controversy. It was only from this time that prescription commences."

Is the contention of counsel justified? They cite *Langdeau* v. *Hanes*, 21 Wall. 521, and *Morrow* v. *Whitney*, 95 U. S. 551. To determine the application of those cases there are important facts to be considered. The Supreme Court of Louisiana said:

"We do not think there is any dispute between the parties as to the facts. That on the 12th of March, 1812, the Board of Commissioners appointed under section 4 of the act of Congress, approved March 3, 1807, confirmed to Bennet Jopling, under certificate No. 1927, by *virtue of occupancy and settlement under Joseph Chevalier Poiret,* nine hundred and thirteen and ninety-eight hundredths acres of land in Bayou Mallet woods, in the county of Opelousas. That on April 29, 1816, Congress, reciting the various acts bearing upon the subject, (act of March 10, 1812, act of February 27, 1813, and act of April,

1814,) passed an act for the confirmation of certain land claims in the Western District of the State of Louisiana, and that under section 4 of that act it was enacted 'that the claims marked "B," described in the reports of the Commissioners of the Western District of the State of Louisiana, formerly Territory of Orleans, and recommended by them for confirmation, be and the same are hereby confirmed.' That the claim of Bennet Jopling, covered by certificate No. 1927 of the Board of Commissioners, was confirmed in favor of Jopling by that act of Congress. That, although the claim was so confirmed by act of Congress, no patent was issued for the land by the United States Government until July, 1900."

In other words, the land claimed by Poiret was identified by his possession. It contained a definite quantity. Fractions of acres were even regarded, and almost necessarily. The right of a claimant depended upon possession, and naturally its extent was marked by definite boundaries. How else could a claim have any strength at all—any right to confirmation at all? The certificates issued by the commissioners were denominated grants, (sec. 7,) and they were required to designate a tract of land, (sec. 6). Section 7, it is true, provided for a survey. The provision is "that the tracts of land thus granted by the commissioners shall be surveyed at the expense of the parties, under the direction of the surveyor general," in all cases where authenticated plats of the land, as surveyed by the French, Spanish and American governments, respectively, shall not have been filed with the proper register and recorder, or shall not appear on the public records of the territories. The surveying officer was required to transmit general and particular plats of land thus surveyed to the proper register and recorder and copies to the Secretary of the Treasury. The duties of the officers under the act may be summarized as follows: (1) The commissioners to investigate the claim, and if they confirmed it to issue a certificate thereof and transmit a transcript of their final decision to the Secretary of the Treasury. (2) The register and receiver, upon the filing of the

certificate with him and a plat of the land being also filed
with him by the surveyor general or officer acting as surveyor
general, should issue a certificate, which, being transmitted
to the Secretary of the Treasury, would entitle the party to a
patent. (3) The survey of the land by the surveyor general
or officer acting as such. (4) Reports by the Secretary of the
Treasury to Congress "for their final determination thereon,
in the manner and at the time heretofore prescribed by law
for that purpose." There is no evidence that the register and
receiver issued a certificate other than that mentioned in the
patent. The commissioners performed the duties required of
them and the Secertary of the Treasury performed his. And
a survey was made of the land in 1856.

Under these facts did the title pass by the confirmation ex-
pressed in the act of Congress of April 29, 1816, 3 Stat. 328, or,
at the latest, upon the survey in 1856, or did it pass by the
patent in July, 1900? For answer we may refer to the cases
cited by the plaintiff in error.

In *Langdeau* v. *Hanes,* the contest was between a title
claimed by virtue of the act of Congress, March 26, 1804,
which confirmed claims to lands in the district of Vincennes,
and a title claimed by adverse possession. It was provided
by the act of Congress that a person to whom land is con-
firmed, whenever his claim shall have been located and sur-
veyed, shall be entitled to the certificate from the register
and receiver, which certificate shall entitle him to a patent.
The tract in dispute was surveyed in 1820, but a patent was
not issued until 1872. The defendant's claim of title rested on
an adverse possession of thirty years. The state court held
that the act of confirmation of 1807 was a present grant and
became so far operative and complete as to convey the legal
title when the land was located and surveyed by the United
States in 1820; second, the patent was not of itself a grant of
the land but only evidence of a grant; third, the adverse pos-
session of the defendant was a bar to the recovery by the plain-
tiff. These propositions were affirmed by this court. The

court held that the act of Congress of 1804 was a recognition and discharge of the obligation, incurred by the government upon acquiring the territory from Virginia, to protect and confirm the possession. and titles of the inhabitants to their property. And it was held that it was competent for Congress to provide how that should be done, and Congress required a presentation of the claims to the register and receiver of the land office, constituted them commissioners to pass upon the claims "according to justice and equity," and to transmit to the Secretary of the Treasury a transcript of their decisions with their report. The Secretary of the Treasury submitted the decisions and the report to Congress, as he was required to do, and Congress passed the act of 1807 to confirm them. The court said:

"This confirmation was the fulfillment of the condition stipulated in the deed of cession so far as the claimants were concerned. It was an authoritative recognition by record of the ancient possession and title of their ancestor, and gave to them such assurance of the validity of that possession and title as would be always respected by the courts of the country. The subsequent clause of the act providing for the issue of a patent to the claimants, when their claim was located and surveyed, took nothing from the force of the confirmation.

"In the legislation of Congress a patent has a double operation. It is a conveyance by the government when the government has any interest to convey, but where it is issued upon the confirmation of a claim of a previously existing title it is documentary evidence, having the dignity of a record, of the existence of that title, or of such equities respecting the claim as justify its recognition and confirmation. The instrument is not the less efficacious as evidence of previously existing rights because it also embodies words of release or transfer from the government.

"In the present case the patent would have been of great value to the claimants as record evidence of the ancient possession and title of their ancestor and of the recognition and con-

firmation by the United States, and would have obviated in any controversies at law respecting the land the necessity of other proof, and would thus have been to them an instrument of quiet and security. But it would have added nothing to the force of the confirmation. The survey required for the. patent was only to secure certainty of description in the instrument, and to inform the government of the quantity reserved to private parties from the domain ceded by Virginia.

"The whole error of the plaintiff arises from his theory that the fee to the land in controversy passed to the United States by the cession from Virginia, and that a patent was essential to its transfer to the claimants, whereas, with respect to the lands covered by the possessions of the inhabitants and settlers mentioned in the deed of cession, the fee never passed to the United States; and if it had passed, and a mere equitable title had remained in the claimants after the cession, the confirmation by the act of 1807 would have operated as a release to them of the interest of the United States. A legislative confirmation of a claim to land is a recognition of the validity of such claim, and operates as effectually as a grant or quitclaim from the government."

This doctrine was repeated in *Morrow* v. *Whitney*, 95 U. S. 551. The question arose upon the ruling of the trial court refusing to admit a patent of the United States in evidence. Sustaining the ruling, this court said:

"In this case, the patent would have been of great value to the claimant. It would have enabled him, without other proof, to maintain his title in the tribunals of the country. Founded as it would have been upon a survey by the government, it would have removed the doubt as to the boundaries of the tract, which always arises where their establishment rests in the uncertain recollection of witnesses as to ancient possession. It would thus have proved to its possessor an instrument of quiet and security, but it would not have added anything to the interest vested by the confirmation. *Ryan et al.* v. *Carter et al.*, 93 U. S. 78."

· These cases are not in conflict with *Gibson* v. *Chouteau*, 13. Wall. 92, as was observed in *Langdeau* v. *Hanes*. The land in controversy had been part of the public lands of the United States. The title of Gibson was derived under the act of Congress of February 17, 1815, for the relief of the inhabitants of the county of New Madrid, in the Territory of Missouri, who had suffered by earthquakes. 3 Stat. 211. · James T. O'Carroll obtained permission from the Spanish authorities to settle on vacant lands in the district of New Madrid, in the Territory of Louisiana, and in pursuance of the permission he settled upon a tract embracing about 1000 arpents of land, in that part of the country which afterwards· comprised the county of New Madrid in the Territory of Missouri. The land settled upon, to the extent of 640 acres, was confirmed to O'Carroll by· different acts of Congress. In 1812 the land was injured by an earthquake, and upon proof of the fact the recorder of land. titles at St. Louis gave a certificate to that effect, which authorized the location of a like quantity on any of the public lands of the Territory of Missouri, a sale of which was authorized by law. Under this certificate the land in dispute was located. The land located had been previously surveyed, but for some cause the survey and plat were not returned to the recorder until August, 1841. The recorder then issued a patent certificate to "James T. O'Carroll or his legal representatives." The survey was not approved by the Commissioner of the General Land Office, because it did not show its interferences with conflicting claimants. A new survey and plat were made, showing interferences, and were filed with the recorder on the 26th of March, 1862, and a new patent certificate issued. In the following June the patent of the United States was issued to Mary McRee, who had acquired the interest of the locator by various mesne conveyances. In August following she conveyed to Gibson. Against the title thus acquired, among other defences, adverse possession for the period prescribed by the statute of Missouri was pleaded. The plea was sustained. The judgment was reversed by this court.

It is obvious that there is a clear distinction between the case and *Langdeau* v. *Hanes* and *Whitney* v. *Morrow*. The act of 1815 did not confirm to O'Carroll the tract of land which he obtained from the Spanish authorities. It only enabled him or his representatives to locate a like quantity of the public land, and a segregation of that quantity and its exact identification were necessary, and this did not occur until the issue of the patent in 1862. The patent, therefore, was not the mere formal assurance of a title that had been conveyed by another government, but it was the conveyance of the title of this government after conditions performed, which authorized but did not anticipate it nor were they its equivalent. The case at bar, therefore, does not come under the precedent of *Gibson* v. *Chouteau;* it comes under that of *Langdeau* v. *Hanes* and *Morrow* v. *Whitney*.

Plaintiff in error claims under Joplin, who claimed under Poiret, who claimed under the French government. And it was the title to a tract of land thus claimed that the commissioners under the act of 1807 adjudicated and granted, and it was that title which was confirmed by the act of April 29, 1816.

What element then is wanting? Plaintiff in error says the identification of the land, its complete definition by boundaries, and until this was done the title was in the United States. We need not dispute the principle upon which the contention rests. We think its conditions were satisfied. Poiret's title was obtained by occupation and the right of his successor Joplin depended upon that, and by that the award of the commissioners could only have been measured. It is not conceivable that the boundaries of the tract were not ascertained by them. Their certificate, as was seen, expressed an exact quantity, 918.98 acres, and having a frontage of 1080 arpents. The evidence before the commissioners is not exhibited, but there was a survey in 1856. The remarks of the Supreme Court of Louisiana are, therefore, apposite:

"It is evident that Poiret was shown to the board to have *already occupied and settled a particular body of land for the time*

*stated* and to have *already had an existing right or privilege to a particular tract.* The identity of the tract confirmed must have been fixed by evidence before the board and the survey which followed was unquestionably based upon the evidence preserved and made known to the surveyor. The Jopling claim under Poiret was not based upon the survey, but the survey was based upon the existing claim, and simply identified the land to which Poiret and Jopling were entitled by antecedent occupancy and settlement."

Speaking of the survey, the court said:

"If, however, a survey of the claim was necessary in order to complete the transfer of ownership of this property to Jopling, we are satisfied that a survey of the same was made and approved by the surveyor general, W. J. McCulloh, as far back as 1856. The present surveyor general of Louisiana refers to the survey and field notes of Phelps as having been approved, but not as a matter of original approval by himself, as the plaintiff seems to contend. In the act of sale of this land under which the plaintiff claims from James W. Jopling to James H. Houston, Jr., the land transferred is referred to as a 'Spanish grant' with the added words (see parish map and a list of private land claims, where the above described property is well defined as belonging to Bennet Jopling). We have before us a copy of the parish map here referred to, with the different private claims (among others that of Bennet Jopling) distinctly set out and the surveys on which they were located minutely detailed, certified to as far back as 1856 by the surveyor general. It may be that it is not strictly and technically in evidence, but it is before us by reference in one of the acts, and were we not to act upon it the only effect would be to remand uselessly the case in order to have it formally introduced."

Bennet Joplin, it was testified, died before the assessment was made upon which the tax sale upon which the title of the defendants in error depended, and the validity of the assessment, therefore, is denied, because it was not made in the name of the owner, as required by the statute of the State of 1870.

The assessment is also attacked for non-conformity with the statutes in other particulars. In passing on the questions thus raised the Supreme Court of Louisiana construed the statutes of the State differently from plaintiff in error, and answered all the questions on grounds not Federal, and which, therefore, we need not discuss.

*Judgment affirmed.*