# Nelson, *et al. v.* Weekley.

## *Ejectment.*

(Decided May 30, 1912. 59 South. 157.)

*Public Lands; Transfer; Title; Divestiture.*—Where W was entitled to a donation claimed under the provision of Second Statutes U. S. 229, that when it should appear to the Commissioners that the claimant was entitled to lands by virtue of a settlement under the Bourbon Act of Georgia, he should be given a certificate stating the circumstances, which, on being duly filed with the Register of the Land Office, should entitle claimant to a patent, the issuance of the certificate by the commissioners verifying his right vested in him only an equity which did not ripen into a title until the patent issues.

APPEAL from Baldwin Circuit Court.

Heard before Hon. A. E. GAMBLE.

Ejectment by Lewis B. Weekley against Edgar G. Nelson and others. Judgment for plaintiff, and defendants appeal. Affirmed.

LESLIE HALL, for appellant. Defendants claim title by adverse possession, and insist that the title from the United States passed to John Weekley in August, 1805, upon the certificate of the Commissioners.—*Joplin v. Chachere,* 192 U. S. 94; *Langdeau v. Haynes,* 21 Wall. 521; *Morrow v. Whitney,* 95 U. S. 551. The court was therefore in error in directing judgment for defendants.

C. J. TORREY, for appellee. The certificate of the Commissioners merely gave Weekley an equity which did not ripen into a title on which a party could maintain or defend an ejectment suit until the issuance of the patent.—*Lowery v. Baker,* 141 Ala. 600; *Stringfellow v. T. C. & I.,* 117 Ala. 250; *Wood v. Pittman,* 113 Ala. 207; 13 Wall. 92; 32 U. S. 239; 166 U. S. 493. Adverse possession therefore did not begin to run until the issuance of the patent, which was not issued until 1908. —*Stringfellow v. T. C. & I., supra,* and other authorities cited. The act specifically provided for the issuance of a patent, and the certificate merely created an equity until the issuance of the patent.—*Michigan L. Co. v. Rust,* 168 U. S. 589; *Knight v. S. S. L. A.,* 142 U. S. 161.

ANDERSON, J.—The sole question in this case is whether or not the United States parted with the legal title to the land by virtue of the certificate issued by the commissioners to John Weekley in August, 1805, in pursuance of an act of Congress, c. 27, 2 Stat. U. S. p. 229, or did not do so until the issuance of the patent to said Weekley's heirs in the year 1908. Indeed, it is agreed between counsel that, if the government parted with the legal title in 1805, under the certificate of the commissioners, then there should have been a judgment for the defendants. If, on the other hand, the govern-

,ment had the legal title when issuing the patent of 1908, the case was properly decided in favor of the plaintiff.

The commissioners were acting under an act of Congress of March 3, 1803, c. 27, 2 Stat. 229, entitled "An act regulating the grants of land and providing for the disposal of lands in the United States south of the state of Tennessee." The second section of that act provided for the granting or donation of lands to a certain class of persons upon certain conditions; and it appears that the said John Weekley was within that class named and described in section 2 of the said act. In section 6 of said act it is provided that the Register of the Land Office, and two other commissioners, shall determine from evidence whether the various claimants to land, under the several different sections in the act, have complied with the conditions prescribed; and the section also prescribes the duties of the commissioners touching the matters submitted to them. A certain class of named claimants or donees are entitled to have a formal confirmation of their title, which shall be recorded, and, when so recorded, the act declares that the confirmation and record shall amount to a relinquishment on the part of the United States to any claim to such land. It is plain that John Weekley does not come within this class. The part of section 6 referred to reads as follows: "When it shall appear to them (commissioners) that the claimant is entitled to a tract of land under the articles of agreement and cession with Georgia, aforesaid, in virtue of a British or Spanish grant, legally and fully executed, they shall give a certificate thereof describing the tract of land and the grant, and stating that the claimant is confirmed in his title thereto by virtue of the said articles; which certificate being recorded by the Register of the Land Office, whose duty it shall be to record the same in a book to be kept by him

for that purpose, shall amount to a relinquishment forever on the part of the United States to any claim whatever to such tract of land."

John Weekley does not come within the class described in the above quotation, but does come within the class described in that portion of said section 6 immediately following, and which reads as follows: "When it shall appear to the said commissioners that the claimant is entitled to a tract of land by virtue of a settlement under the Bourbon act of Georgia, recognized in the said articles of agreement and cession, or of either of the two first sections of this act, they shall give a certificate thereto, stating the circumstances of the case and that the claimant is entitled to receive a patent for such tract of land by virtue of this act, which certificate being duly entered with the Register of the Land Office on or before the 1st day of January, 1805, shall entitle the party to a patent for the said tract, which shall issue in like manner as is provided by this act for the other lands of the United States, without the party paying anything therefor, except the surveying expenses and the fees of office."

It is beyond controversy that Weekley, being of the class named in said section 2, became "entitled to a patent" from the land office, but which did not issue until a few years since. It is equally clear that the decision and report of the commissioners did not amount to a conveyance of the fee from the United States. This decision and report is simply that the board decides that John Weekley's claim "is supported agreeably to the requirements of the law." Presumptively at least, if not of necessity, this report was filed in the Land Office Department at Washington. Clearly it created only an equity in John Weekley, which did not ripen into a title

until a patent issued in accordance with the authority given in that part of said section six last quoted.

When the act of Congress provides for the issuance of a patent to public lands upon the performance of certain conditions by the grantee, then it is the rule that the legal title never passes until the patent acually issues, and this notwithstanding the equity may be perfect.—*Michigan Land Co. v. Rust,* 168 U. S. 589-593, 18 Sup. Ct. 208, 42 L. Ed. 591.

As to the two clauses in section 6 of the act of March 3, 1803, above quoted, the first clause quoted declares that the certain class of claimants or donors therein named, upon performance of required coditions and being in the category named, shall be given a certificate describing the lands and the grant and stating that the claimant is confirmed in his title, and which, being recorded by the Register of the Land Office, shall amount to a relinquishment forever on the part of the United States to any claim whatever to such tract of land. It was the evident intention of Congress to have the title pass when all conditions and requirements had been performed and certificate issued and recorded under this clause.

Now it is equally clear, from the very distinction and difference made by the terms in the next clause of section 6 above quoted, from the first clause that it was not the intention of Congress for the title to pass automatically as to the class named in section 2, when the commissioners reported that the "claim is supported agreeably to the requirements of the law," and "that the claimant is entitled to the patent."

Clearly in the latter case (section 2) the report of the commissioners created merely an equity and nothing more. The acts specifically provide for the issuance of the patent. As said in *Michigan Land Co. v. Rust,* 168

U. S. 589, 18 Sup. Ct. 208, 42 L. Ed. 591: "Wherever the granting act specifically provides for the issue of a patent, then the rule is that the legal title remains in the government until issue of the patent; and, while so remaining, the granting is in process of administration and the jurisdiction of the Land Department is not lost."—See top of page 593 of 168 U. S., page 209 of 18 Sup. Ct. (42 L. Ed. 591). On the same page it is said: "A warrant and survey authorize the proprietor to demand the legal title, but did not in themselves constitute a legal title until the consummation of the title by a grant; the person who acquires an equity holds a right subject to examination. This jurisdiction of the department has been maintained in cases of pre-emption, where the entire purchase money has been paid and a receiver's final certificate issued."—See *Knight v. U. S. L. A.*, 142 U. S. 161, 12 Sup. Ct. 258, 35 L. Ed. 974.

It is clear that, upon and after the filing of the report on the John Weekley claim in the Land Office, that office had jurisdiction to pass upon the correctness of the report upon any contest that might have been made. The correctness of the survey and any other matters that involve the determination as to whether a patent should issue to John Weekley on application, upon any contest as to its issue, or even ex mero motu, remained within the jurisdiction of the Land Office. This being the case, the title was in the government and did not pass until the patent in this case was issued.

Appellants seem to rely on two cases to support their contention that the legal title automatically passed out of the government when the commissioners reported that "it was their opinion that the John Weekley claim was supported agreeably to the requirements of the law, and that he was entitled to a patent for these 600 and odd acres." These cases are: *Langdeau v. Hanes*, 21

Wall. 521-531, 22 L. Ed. 606; *Joplin v. Cachere,* 192 U. S. 94-108, 24 Sup. Ct. 214, 48 L. Ed. 359. Even a casual reading of the facts and opinions in these two cases clearly indicate that they are not applicable in so far as it is claimed that they support appellants' contention.

The character, conditions, and stipulations of the several acts of Congress, out of which the controversy arose in these two cases, are so essentially different, more extensive, and far-reaching than the act of 1803, under consideration in the case at bar, that we may easily concede the absolute correctness of these decisions without in the least degree yielding our own conclusion that in the Weekley Case the title did not pass till the patent issued. These two cases in no way contradict or modify the several United States cases cited by us.

If, in the case at bar, the title passed, eo instanti, when the commissioners filed their report, why was it they reported in the words shown, viz., "That in the opinion of the board the claim was supported agreeably to the requirements and the claimant was entitled to a patent?" Clearly their opinion, under the act, created only an equity and nothing more. It could only ripen into a legal title by the issuance of the patent.

In the *Langdeau Case,* 21 Wall. 521, 22 L. Ed. 606, the headnotes epitomize the fact, and the opinion thereon by Justice Fields makes the case a strong one in support of our holding that the title in the case at bar did not pass till the issuance of the patent.

In the *Joplin Case,* 192 U. S. 94, 24 Sup. Ct. 214, 48 L. Ed. 359, it appears that, under an act of Congress of 1807 (Acts March 3, 1807, c. 36, 2 Stat. 440), commissioners decided in favor of the Joplin claim, and that in section 4 of said act it was declared "that the decision of the commissioners in favor of the claimant shall be

final against the United States, any act of Congress to the contrary notwithstanding."

And it also appears that the report of the commissioners in the *Joplin Case,* and his title, was confirmed by an act of Congress passed in April, 1816 (Act April 29, 1816, c. 159, 3 Stat. 328), and in the Supreme Court decision in the *Joplin Case* it is said that "a legislative confirmation of a claim to land is a recognition of its validity, and operates as effectually as a grant or quitclaim from the government." This is familiar law. Beyond all question, in the *Joplin Case* the act of 1807 and the special confirmatory act of 1816, in clear and positive terms, divested the United States of the fee in question and placed the title in Joplin.

We are of the opinion that the United States held the legal title to the land until the issuance of the patent in 1908, and that the trial court properly charged that the plaintiff was entitled to recover.

The judgment of the circuit court is affirmed.

Affirmed. All the Justices concur.