(78 South. 956)

BOONE et al. v. GULF, F. & A. RY. CO.
(1 Div. 23.)

(Supreme Court of Alabama. May 9, 1918.)

1. TAXATION ⊕179 — LANDS OF ENTRYMAN BEFORE PATENT ISSUE.

When all the 'conditions prescribed by Congress for alienation of public lands have been complied with, and only the ministerial duty to issue the patent remains, the state may tax the land to the beneficial owner, notwithstanding the bare legal title remains in the government.

2. ADVERSE POSSESSION ⊕7(3) — AGAINST ENTRYMAN PRIOR TO PATENT.

After all the conditions prescribed by Congress for alienation of public lands had been complied with, and before issue of patent, the title is capable of being held adversely to the original entryman, or others claiming through him.

3. TAXATION ⊕693 — SALE — BURDEN OF PROOF.

The burden of averring and proving the regularity of a tax sale rests upon the claimant thereunder.

4. ADVERSE POSSESSION ⊕79(4)—COLOR OF TITLE—VOID TAX DEED.

Where, through lack of proper averments, a tax deed must upon demurrer, be considered void as a muniment of title, it will support adverse possession under color of title.

5. ADVERSE POSSESSION ⊕79(4) — HOLDING UNDER TAX DEED—LIMITATION.

Whether all the preliminary requirements of the statute governing the sale of land for taxes were complied with or not, occupancy of the land for five years under a tax deed, executed and delivered in conformity to Acts 1868, p. 327, § 92, is a good defense to a suit to compel payment for the land or enjoin its use.

6. ADVERSE POSSESSION ⊕104 — PRESUMPTION OF GRANT.

Possession entitling one to presumption of a grant would, without its aid, suffice to vest title under the statute of limitation.

7. ESTOPPEL ⊕106—TITLE TO LAND.

In a court of law, a title to land cannot be effected by an estoppel in parol, since in law the title can pass only by writing.

8. ESTOPPEL ⊕95—ASSERTION OF TITLE—EQUITABLE ESTOPPEL—SILENCE.

Mere silence to raise an estoppel against the assertion of title must have features of willfulness and fraud.

9. ESTOPPEL ⊕93(4)—ACQUIESCENCE—CONSTRUCTION OF RAILROAD.

Where a landowner acquiesces in an occupation for construction of a railroad, equity will preclude him from recovering the land in ejectment, and in such case there remains in the owner only a right of compensation.

Appeal from Circuit Court, Monroe County; Ben D. Turner, Judge.

Suit by Frank Boone and others against the Gulf, Florida & Alabama Railway Company. Demurrer to defendant's cross-bill overrruled, and plaintiffs appeal. Affirmed.

H. H. McClelland, of Mobile, and Barnett, Bugg & Lee, of Monroeville, for appellants. Phillip D. Beall, of Pensacola, Fla., for appellee.

SAYRE, J. Appellants filed this bill asserting their ownership of a certain tract of land in Monroe county, averring that appellee corporation, without grant or leave from them and without proceedings to condemn a right of way, had constructed its railway over the tract, and praying that appellee be required to pay the value of the right of way thus occupied by it, or, in default thereof, that it be enjoined from the further use of the same. Appellee, answering, made its answer a cross-bill under the statute, averred its ownership of the tract in question, and prayed that its title be quieted against the claim of appellants. Demurrer to the cross-bill was overruled, after which this appeal.

Appellants claimed title by inheritance from John Hathcock, who, in 1859, purchased the land from the United States government under the provisions of Act Cong.

Aug. 4, 1854, c. 244, 10 Stat. 574, providing that "any person applying to enter any of the aforesaid lands, shall be required to make an affidavit before the register or receiver of the proper land office, that he or she enters the same for his or her own use and for the purpose of actual settlement and cultivation, or for the use of an adjoining farm or plantation owned or occupied by him or herself," etc. Appellee averred in its cross-bill that Hathcock at the same time paid the full purchase price of the land, and then and there became entitled to a patent, but that thereafter and long after the death of Hathcock, in, to wit, 1907, and not until then, patent was issued in the name of their ancestor Hathcock and delivered to appellants, his heirs.

Appellee, showing its own claim of title on the other hand, averred that the land had been assessed by the state for taxation in 1869, had been sold at tax sale in 1870 to J. F. McCorvey, to whom deed was made in 1872, and under whom it claimed through mesne conveyances. Appellee further averred that it and its predecessors in title, to state the general effect of the averment, had been in adverse possession of the land for more than 30 years, and, further, sought to estop appellants from asserting their claim under the patent by showing that for 20 years they had stood silently by while appellee and its predecessors in title paid the taxes, put valuable improvements upon the land, and brought the same into a high state of cultivation.

[1] Whether the land over which appellee has constructed its railway was subject to taxation by the state in 1869 is the principal question in this case, and that question must be answered in the affirmative. We have held that a patent issued under circumstances similar to those of this case invested the heirs of the patentee with no new or additional property in the land, but only gave them better and conclusive evidence of the title acquired by him; that, in cases of sales by the United States, the law gives the right, and the patent is to be considered, not as the title itself, but as the evidence by which it is shown that the prerequisites to a legal sale have been complied with; that the payment of the purchase money vests a perfect equity in the purchaser, leaving in the general government no more than a bare, technical legal title, held in trust for the purchaser, and that to this equity, except as against the United States and those claiming under it, the state may attach what incidents and qualities of property it pleases. Birmingham Coal & Iron Co. v. Arnett, 181 Ala. 621, 62 South. 26. It is entirely clear that the property of the United States cannot be taxed by a state or any of its governmental subdivisions. But it is the well-settled law of the federal courts that when all the conditions prescribed by Congress for the alienation of the public domain have been complied with, the land alienated being distinctly defined, and it only remains for the officers of the government to discharge their ministerial duty by the issue of a patent, the right thus vested in the purchaser is equivalent, so far as the government is concerned, to a patent actually issued, and the land in the hands of the purchaser is taxable by the state, notwithstanding the legal title yet rests in the government; the principle underlying the rule being that one who has acquired the beneficial ownership of the land, and is not excluded from its enjoyment, cannot be permitted to use the fact that the naked legal title remains in the government to avoid his just share of state taxation. Bothwell v. Bingham County, 237 U. S. 642, 35 Sup. Ct. 702, 59 L. Ed. 1157; Barney v. Dolph, 97 U. S. 652, 24 L. Ed. 1063.

[2-5] It results also from the principle of the foregoing authorities that the land, in the state of its title, was capable of being held adversely to the original entryman and those claiming through him, and that appellee may have acquired title under the general statute of limitations of ten years or under the short statute of five years made and provided in cases of the sale of lands for taxes and in force at the time of the sale to the ancestor of appellants. Payment of the purchase money vested in the entryman and his successors all the substantial interest of the government, with an inchoate legal title, alienable, descendible to heirs, subject to execution or other liens, and to be divested or transferred in the same manner as any other legal title. In the federal courts such title will support trespass, waste, or ejectment. Cawley v. Johnson (C. C.) 21 Fed. 492. If appellants or their ancestor had a certificate of payment, on that they might have maintained ejectment in the courts of this state. Code, § 3980. Otherwise they might have maintained an equitable action for the recovery of the land. It is true that the statute of limitations does not run against the government; but wherever there is a person competent presently to assert a claim of title, it is laid down generally and correctly that an adverse possession for a length of time which makes out a title under the statute of limitations may be set up against such claim. Harrison v. Pool, 16 Ala. 167. The cross-bill avers nothing in respect of the proceedings for a tax sale antecedent to the deed, whereas the burden of averring and proving regularity in such proceedings rests upon the claimant under a tax sale, or, rather, did at the time of the sale alleged in this case (Reddick v. Long, 124 Ala. 260, 27 South. 402); and while the deed must therefore be taken on demurrer to be void as a muniment of title, it is admissible and will support an adverse possession under color of title. Dillingham v. Brown, 38 Ala. 311; Hooper v. Bankhead, 171 Ala. 626, 54 South. 549. And whether

all the preliminary requisitions of the statute were complied with or not, occupancy of the land for a period of five years under a tax deed executed and delivered in conformity with the act of 1868 (Acts, p. 327) would be a good defense. Jones v. Randle, 68 Ala. 258; Lassitter v. Lee, 68 Ala. 287.

It is not thought that the opinions in the cases of Price v. Dennis, 159 Ala. 625, 49 South. 248, Nelson v. Weekley, reported in 177 Ala. 130, 59 South. 157, and 195 Ala. 1, 70 South. 661, cases relied upon by appellants, conflict with what has been said here. Those were both actions of ejectment, turning, as the court held, upon the strict legal title. In the first-named case the court denied the validity of a tax title and the efficacy of an adverse holding under it for the reason that, the equity of the locator of military bounty lands remaining, as the court held, incomplete until shortly before the suit was brought, the general government had such an interest in the lands that they could not be sold by the state for taxes, nor could they be adversely held. In the last-named case, arising under still another act of Congress, it appeared that the right of the donee of public land remained in suspense until shortly before the suit was brought, no question of possession being involved, and for this reason a claim of title by presumptive prescription was denied. In other words, in those cases there had been no full performance of the conditions, prescribed by Congress, upon which public lands may be alienated. United States v. Southern Oregon Co. (C. C.) 196 Fed. 423.

By a quotation from Price v. Dennis, supra, counsel for appellants intimate that there could be no valid tax deed because the government might have canceled the entry or refused to issue a patent. We have already cited decisions of the Supreme Court of the United States touching upon this question. And in Cawley v. Johnson, supra, it was said that:

"The purchaser, when he had paid his money and taken his receipt, has done all in his power to complete the purchase, and that the land from that time is taken from the market, and designated and set aside for the purchaser's use; that the receiver's receipt is as binding upon the government as a patent, the issuing of which is a ministerial act which conveys no new or substantial claim or interest in the land. Of course, the certificate is liable to be canceled by the government in case the sale was improperly made, but no more so than a patent. Either a certificate or patent may be recalled or canceled in case the government has previously sold the land. But the certificate, as fully as the patent, conveys all the substantial interest of the government in the land, with an inchoate legal title, which may be aliened, will descend to heirs, * * * and the title divested or transferred in the same manner as any other legal title"—citing our case of Goodlet v. Smithson, 5 Port. 245, 30 Am. Dec. 561, along with numerous others.

[6-9] Appellee in its cross-bill claims to have derived title by means other than the statutes of limitations, as has appeared; but these other alleged sources of title require no extended comment. It appears to us upon the averments of the cross-bill that appellee's title may be left to rest upon the statutes mentioned. It does not appear that the prescriptive presumption which arises out of possession can be of any service to appellee, since a possession which would entitle it to the benefit of the presumption of a grant would, without its aid, suffice, under the statutes of limitations aforesaid, to vest title in it or those under whom it claims. Snow v. Bray, 73 South. 542;[1] Echols v. Hubbard, 90 Ala. 309, 7 South. 817. Nor can the fact that appellee and those under whom it claims have long been in possession, improving the property, operate upon the title otherwise than through the statutes aforesaid. In a court of law the title to land cannot be affected by an estoppel in parol, for, in law, the title can pass only by writing. In equity the rule is different; but the facts stated in the bill are insufficient to raise an estoppel. Appellants had not been in possession for many years before appellee went upon the land. For many years, it is averred, appellee's predecessor in title had been in possession, improving the land and bringing it into a high state of cultivation. The mere silence of appellants under these conditions, however otherwise it may have acted, did not operate by way of estoppel to deprive appellants of their title, for mere silence, to raise an estoppel against the assertion of title, must have features of willfulness and fraud. Steele v. Adams, 21 Ala. 534. There is a rule, based upon considerations of public policy, that where the owner of land acquiesces in the occupation thereof for the construction of a railroad, equity will preclude him from recovering the land in ejectment. In such case there remains in the owner only a right of compensation. S. & N. Ala. R. R. Co. v. A. G. S. R. R. Co., 102 Ala. 236, 14 South. 747. But that rule does not aid the equity of the cross-bill in this cause.

The decree overruling the demurrer to the cross-bill will, for the reasons pointed out, be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.