(80 South. 362)

STEIN et al. v. ENGLAND. (1 Div. 48.)

(Supreme Court of Alabama. Dec. 19, 1918.)

ADVERSE POSSESSION ⬤�ா7(2)—TAXATION ⬤�ா5 —PUBLIC LAND.

Where land claim under a Spanish grant was confirmed by Act Cong. March 3, 1819, the title to the land, prior to the issuance of patent by Commissioner of General Land Office upon certificate of register and receiver under section 12 of the act, was in the United States and exempt from taxation, and title thereto could not be acquired by tax sale or adverse possession.

Appeal from Circuit Court, Mobile County; Saffold Berney, Judge.

Action by Gertrude B. England against Thomas F. Stein and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Appellants (defendants) seek by this appeal to reverse the judgment of the lower court, whereby appellee is entitled to lands in the vicinity of Mobile through inheritance from her ancestor, Anthony Espejo, to whom a "permit to settle" the lands was issued March 21, 1803, by the Spanish commandant at Mobile, while it constituted a part of the Spanish possession called "West Florida." Espejo inhabited and cultivated the lands from 1806 to 1813 and after his death it was possessed and claimed by his heirs, up to and at the occupation of Mobile by the United States troops April 15, 1813. Espejo's heirs presented their claim to this land to the United States commissioners appointed to receive such claims, who reported the facts to Congress, which on March 22, 1819, confirmed the same to the extent of 640 acres, which were duly surveyed and noted as belonging to the heirs of said Espejo on the maps of the United States land office filed in Mobile county as early as 1831. The cultivation and use of the lands were abandoned by the Espejo heirs, and in 1870 the lands were regularly assessed for state and county taxes to "unknown owners," and were sold for taxes. This tax title, accompanied by actual, continuous, open, notorious, and exclusive possession of the land, under claim of ownership, adversely and hostilely to the world, passed by conveyances and inheritance to the appellants in 1912. Since 1870 the lands have been assessed for taxes and

the taxes paid by the appellants and their predecessors in interest.

In January, 1913, some of the heirs of Espejo procured from the register and receiver of the United States land office at Montgomery a "private land claim certificate," reciting that the Espejo's claim to this land was confirmed by the act of Congress of March 3, 1819, was surveyed as shown by the township plat approved in 1845, and that, upon presentation of the certificate to the Commissioner of the General Land Office at Washington, the heirs shall be entitled to receive a patent. They then procured the issue of the United States patent dated April 30, 1913, reciting the certificate, that the claim was confirmed by Congress in 1819, and regularly surveyed as shown on the plats approved in 1845, and that in consideration of the premises the United States patented the land to Espejo's heirs.

This suit was brought on May 2, 1917, resulting in a judgment for the plaintiff, from which defendants prosecute this appeal.

Sullivan & Stallworth, of Mobile, for appellants.

Edward W. Faith and Rich & Hamilton, all of Mobile, for appellee.

GARDNER, J. The result of this appeal turns upon the question as to whether or not the land sued for was subject to taxation, or title thereto be acquired by adverse possession prior to the issuance of the patent.

The property sued for is in the claim of Anthony Espejo, and was patented to Gertrude Espejo and others April 30, 1913; a copy of the patent being set out in the transcript, showing that the claim of Espejo was confirmed by section 3 of an Act of Congress of March 3, 1819, c. 100, 3 U. S. Stat. at Large, p. 528. Plaintiff, appellee here, is one of the heirs of the patentee; and it is admitted that defendants claim no interest under said patent but in hostility thereto.

Section 3 of the above-mentioned act provided for cases where the original settler was entitled to a grant as a donation. Section 12 of the act provided for the issuance of a certificate to the claimant by the register and receiver when, in his opinion, he (claimant) is entitled thereto, under such instructions as may be received from the Commissioner of the General Land Office; said section concluding as follows:

"And where it shall appear to the satisfaction of the Commissioner of the General Land Office that the certificate has been fairly obtained according to the true intent and meaning of this act, then and in that case a patent shall be granted in like manner as for other lands of the United States."

Speaking of this provision of said section 12, this court in Doe ex dem. Mims' Heirs v. Higgins, 39 Ala. 9, said:

"It is impossible to resist the conclusion that, by that provision, the Commissioner of the General Land Office is clothed with the authority, upon the presentation of a patent certificate, to inquire whether it was fairly obtained according to the true intent and meaning of the act, and, if he decides that question in the negative, to withhold a patent. Such authority in the Commissioner necessarily includes the power to annul the acts of the subordinate officers, upon which the claim to a patent is predicated; for it would be absurd to say that the claimant had a perfect title by virtue of acts of subordinate officers, when, because those acts were wrong, the Commissioner had rightfully refused a patent. Besides, it would be utterly useless to give to the Commissioner power to refuse a patent, where the certificate was wrongfully granted, if, notwithstanding his refusal, the claimant had a complete title."

It therefore appears that, in the above decision, this court held, in effect, the act of the Commissioner of the General Land Office in determining whether or not the certificate had been fairly obtained according to the true intent and meaning of the act, and therefore as to whether or not a patent should issue, was a judicial act, in that the commissioner was called upon to render a decision. See, also, McArthur v. Brue, 190 Ala. 563, 67 South. 249. In Price v. Dennis, 159 Ala. 625, 49 South. 248, it is held that, until the full equitable title has passed out of the United States, the property does not become the subject of state taxation.

The complete equitable title in this case did not pass from the United States until the patentees were entitled to demand the patent as a matter of right. The certificate of the register and receiver was not obtained until January 31, 1913, and patent issued April 30, 1913. Up to this time the title was in the United States government, and the property was neither subject to taxation by the state nor could title be acquired by adverse possession thereof. Price v. Dennis, supra; Nelson v. Weekley, 177 Ala. 130, 59 South. 157; s. c., 195 Ala. 1, 70 South. 661.

The case of Boone v. G. F. & A. Ry. Co., 78 South. 956,[1] cited by counsel for appellants, in no wise conflicts with the conclusion here reached, as what was there said had reference to that class of cases where the complete equitable title had passed out of the United States, and the issuance of the patent remained but a ministerial act. Nor do we find any conflict in the holding here and in other authorities cited in appellants' brief. Jopling v. Chachere, 192 U. S. 94, 24 Sup. Ct. 214, 48 L. Ed. 359; Bothwell v. Bingham Co., 237 U. S. 642;[2] Maish v. Territory of Arizona, 164 U. S. 599, 17 Sup. Ct. 193, 41 L. Ed. 567; Langdeau v. Hanes, 21 Wall. 521, 22 L. Ed. 606. The latter case, as well as that of Jopling v. Chachere, supra, were commented upon and distinguished from cases of this character in Nelson v. Weekley, 177 Ala. 130, 59 South. 157.

[1] 201 Ala. 560.     [2] 35 Sup. Ct. 702, 59 L. Ed. 1157.

We are of the opinion, therefore, that the title remained in the United States until the issuance of the patent April 30, 1913, and that, therefore, the tax title acquired by the defendants, as well as that sought to be maintained by adverse possession, cannot prevail against the title as shown by the plaintiff. It therefore results that the trial court properly gave the affirmative charge in favor of the plaintiff, and the judgment will be accordingly affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.