KENNON, Justice.
 

 The plaintiffs, seventy-seven in number, filed suit on October 4, 1937, claiming ownership, as the heirs of Joseph Cherami, of 659.69 acres of land, located in the Parish of Lafourche, La., covered by Claim No. 445 in the decisions of the Board of Land Commissioners, appointed under Act of Congress March 3, 1807, 2 Stat. 440, for the purpose of ascertaining the rights of persons claiming land in the territory of Orleans at the time of its cession to the United States. They allege that they and their predecessors in title had initiated proceedings, prior to 1812, to be recognized as the owners of the land and to obtain the United States patent, which was finally issued
 
 *509
 
 to Joseph Cherami, his heirs and assigns, on June 27, 1934; and that during the time between the initiating of the proceedings to obtain this patent and its actual issuance, various people, including the defendant, Paul Lefort, have recorded “pretended acquisitions” and claim to have been in physical possession of the property in question.
 

 The defendant, Paul Lefort, answered, setting up that he had been in continuous and uninterrupted physical possession of the property (which he used as his residence), as owner, under just title, openly and peaceably, for thirty-nine years prior to the filing of the plaintiffs’ suit, having acquired a portion of it on June 17, 1895, from Adrien Lefort, and the remainder thereof from Hypolite Lefort on June 19, 1897. His answer traces the title of his two above named vendors back to a notarial deed from Mrs. Alice L. Foley to Daniel Nettleton, dated April 6, 1840.
 

 The defendant, Paul Lefort, further averred that the lands had been confirmed as private property, and subject to acquisition by prescription since January 3, 1812, when the Board of Commissioners for the Eastern District of the Territory of Orleans confirmed, under authority of Section 4 of the Act of Congress of March 3, 1807, the land in controversy, to Joseph Cherami, and duly issued its certificate setting forth that Joseph Cherami was entitled to a patent for the tract of land so confirmed to him; that the Congress of the United States provided by Act dated April 18, 1814, 3 Stat. 139, for the confirmation of claims of lands in the State of Louisiana, and under the provisions of this Act, one Reuben McCarty, Deputy Surveyor, surveyed the said lands for claimant, Joseph Cherami (as is certified by return of survey dated January 4, 1831) ; that on January 14, 1832, the said survey and the plat accompanying it were duly approved by Gideon Fitz, Surveyor of Public Lands South of Tennessee, and a certified copy thereof was deposited in the General Land Office of the United States; that a re-survey of the land in controversy, along with other private land claims and public lands, was made by Joseph Gorlinski, Deputy Surveyor, in the year 1857, and duly approved and recorded in the General Land Office; that the present official map of the township shows the land in question as Claim No. 445 of the aforementioned Joseph Cherami; that same was approved on January 23, 1858, by Wm. J. McCulloh, then Surveyor General of Louisiana ; that under the provisions of Section 4 of the Act of Congress of March 3, 1807, the title of Joseph Cherami was “ * * * final, against the United States, any act of Congress to the contrary notwithstanding * * subject only to the requirement of the necessary official survey to segregate said tract from the adjoining lands; that the patent upon which the plaintiffs base their suit and which was issued op June 27, 1934, “to Joseph Cherami, his heirs and assigns,” was no new conveyance of title by the United States, but was merely documentary evidence of the existence of a complete title as against the United States in Joseph Cherami, his heirs and assigns; that, therefore, the land, being private property at the time of the defendant’s acquisition in 1895 and 1897, was subject to the
 
 *511
 
 prescription of 5, 10, 20 and 30 years, which prescription he specially pleaded.
 

 The district court, after trial, found for the defendant, Paul Lefort, on the question of possession and acquisition in good faith, and sustained the pleas of prescription of 10 and 30 years acquirendi causa, presented by him. It ruled against the plaintiffs’ contention that the lands were part ■ of the public domain and that prescription could, not have begun against their rights until June 27, 1934 (the date of the issuance of the patent) ; and held that, by virtue of the Treaty of Paris, this land remained the private property of Joseph Cherami when the territory of Orleans became a part of the United States; that this ownership was recognized in the confirmation of the Board of Commissioners under Section 4 of the Act of 1807, which act provided that the decision of the Commissioners was “final, against the United States”; and that any possible contention that the title remained in the United States during the thirty years prior to the filing of suit, was settled by the survey (1831 approved 1832) and the resurvey (1857 approved 1858), and their recordation in the General Land Office of the United States.
 

 The question presented is not a new one. In Jopling v. Chachere et al., 107 La. 522, 32 So. 243, the plaintiff, Jopling filed suit, in 1901, claiming certain land as owner by virtue of United States patent issued on July 16, 1900. This patent confirmed an award of the Board of Commissioners, which had issued a confirmation certificate on March 11, 1812, under the identical Act of Congress under discussion in the instant case. The defendants, who based their title on a tax sale of 1871, pleaded prescription of 3, 4, 5, 10 and 20 years. The Louisiana Supreme Court held that title to the property in question was in Jopling from the time of the confirmation, if not before, and sustained the pleas of prescription.
 

 The case went on writ of error to the United States Supreme Court and is reported in Joplin v. Chachere, 192 U.S. 94, 24 S.Ct. 214, 48 L.Ed. 359. There, the plaintiff unsuccessfully contended that the award of the Commissioners and approval of the survey (in that case, in 1856) was not sufficient to take the land from the public domain and that complete legal title was only vested in Joplin on May 9, 1900, when the patent issued. The United States Supreme Court approved the holding of the Louisiana Supreme Court. That opinion also disposes of the present plaintiffs’ contention that the case of Gibson v. Chouteau, 13 Wall. 92, 20 L.Ed. 534, is controlling in the instant proceeding, and includes the discussion, quoted below, of Langdeau v. Hanes, 21 Wall. 521, 22 L.Ed. 606, which is apropos to the case now before us:
 

 “In Langdeau v. Hanes, the contest was between a title claimed by virtue of the act of Congress, March 26, 1804 (2 Stat. at L. 277, chap. 35), which confirmed claims to lands in the district of Vincennes, and a title claimed by adverse possession. It was provided by the act of Congress that a person to whom land is confirmed, whenever his claim shall have been located and surveyed, shall be entitled to the certificate from the register and receiver, which certificate shall entitle him to a patent. The
 
 *513
 
 tract in dispute was surveyed in 1820, but a patent was not-issued until 1872. The defendant’s claim of title rested on an adverse possession of thirty years. The state court held that the act of confirmation of 1807 was a present grant, and became so far operative and complete as to convey the legal title when the land was located and surveyed by the United States in 1820; second, the patent was not of itself a grant of the-land, but only evidence of a grant; third, the adverse possession of the defendant was a bar to the recovery by the plaintiff. These propositions were affirmed by this court.” [192 U.S. 94, 24 S.Ct. 216.]
 

 The year following this United States Supreme Court’s approval of the Joplin v. Chachere case, the Louisiana Supreme Court, in Ours et al. v. Gray et al., 112 La. 214, 36 So. 326, 328, again held that in instances where a citizen had met all of the requirements set forth by law and had a receiver’s certificate or official receipt entitling him to a patent, this certificate or receipt is sufficient evidence that the land is segregated from the public domain, without the necessity of obtaining a patent to show that fact, and recognized the principle that, although patents are issued in the name of the settler or person making the original claim, the rights that other persons may have acquired to the land in the interim between final proof and the date the patent issues “ * * * are left to be determined among the parties.” Other Louisiana cases in point are: Rutledge v. Harrell, 6 La.App. 172; Trumbull v. Sample, 158 La. 629, 104 So. 479; Lott et al. v. Prudhomme et al., 3 Rob. 293; Terry v. Hennen, 4 La.Ann. 458; Simien, Adm’r, et al. v. Perrodin et al., 35 La.Ann. 931; and Louis et al. v. Giroir et al., 40 La.Ann. 710, 4 So. 878.
 

 The plaintiffs argue that the question of prescription herein is controlled by the decision of Cherami v. Cantrelle, 174 La. 995, 142 So. 150, 154. In that case the defendants had possession of the land for more than ten years, after the issuance of the patent and prior to the filing of the plaintiffs’ suit, and for that reason the court did not find it necessary to pass on the question which forms the principal one in the present suit, as will be noted from the following language of that opinion:
 

 “The contention of plaintiffs that Joseph Cherami had only an inchoate right in and to these lands, until patents were issued to him in 1897, is unimportant in so far as concerns titles tendered by defendants, who rely upon the prescription of 10 years acquirendi causa.”
 

 The plaintiffs, in a “reply” brief, filed after submission of the case to this Court, stress the necessity of “Congressional confirmation to divest the United States of title.” They contend that there was no such confirmation by Congress in this case. It is interesting to note that these same plaintiffs, while urging their claim to the patent, in a brief to the United States Department of Interior, provided the answer to their present contention. That brief, citing as authority West v. Cochran, 17 How. 403, 414, 15 L.Ed. 110, states:
 

 “The Act of Congress, Mar. 3, 1807, was the first to give the Commissioners the pow
 
 *515
 
 er to adjudicate claims against the U. S.
 
 and conclude the government, as to the question of the right of the claimant.
 

 “The certificate and plat being filed (and the record shows that was done here) ‘he was required to issue a Patent Certificate in favor of claimant, which being transmitted to the Secretary of the Treasury, entitled the party to a Patent’ ” (Italics ours.)
 

 It is our conclusion that, when the United States took possession of the territory of Louisiana, the land in controversy, by virtue of the provisions of the Treaty of France, passed to the United States, subject to the claim of Joseph Cherami; that under the provisions of the Act of Congress passed on March 3, 1807, the title of Joseph Cherami became final against the United States not later than January 23, 1858, when the official plat of the re-survey of said land, filed in the General Land Office, was approved. (For the purpose of this decision, it is not necessary to decide whether the original award of the Commissioners appointed under the Act of 1807, and the earlier survey approved in 1832, had this effect.)
 

 Therefore, when the defendant, Paul Le-fort, purchased and went into possession of the property in question in 1897, it was private property and subject to the codal articles regarding prescription.
 

 The record amply justifies the finding of the district court that he was a possessor in good faith and under just title from 1897 until the date of the trial. This ownership and open possession is sufficient to establish his prescriptive title and to entitle him to judgment sustaining the pleas of prescription of 10, 20 and 30 years acquirendi causa, which he specially pleaded; and it is unnecessary to consider the evidence in the record tending to establish the possession of his authors in title.
 

 The judgment of the district court is affirmed, with costs.